IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

v.  CRIMINAL ACTION NO. 2:24-cr-00118

TIWAN ROBERT BAILEY
CARRIE ROY

**MEMORANDUM OPINION AND ORDER**

Pending before the court are two motions: (1) Defendant Tiwan Bailey's Post-Trial Motion to Set Aside Verdicts and Order a New Trial, [ECF No. 215], and (2) Defendant Carrie Roy's Renewed Motion for Judgment of Acquittal or, in the Alternative, Motion for New Trial, [ECF No. 216]. The United States ("the Government") filed responses in opposition, [ECF Nos. 217, 218], and neither Defendant filed a reply. The matters are ripe for review.

During the five-day trial, the Government presented evidence that Defendant Tiwan Bailey obstructed justice, conspired to sex traffic a minor, and sex trafficked four victims, including one minor. The Government also presented evidence that Defendant Carrie Roy conspired with and aided and abetted another in the sex trafficking of a minor victim. The jury returned guilty verdicts as to both Defendants. Because the verdicts are supported by sufficient evidence and the weight of the evidence supports the jury's findings, the verdicts will be upheld. Accordingly, Defendants' motions, **[ECF Nos. 215, 216]**, are **DENIED**.

I.  **BACKGROUND**

On October 16, 2024, a grand jury returned a Third Superseding Indictment against Defendants Tiwan Bailey, Carrie Roy, and David Lee White. [ECF No. 22]. The six-count Indictment charged Defendants Bailey and Roy with engaging in sex trafficking offenses and

charged Defendants Bailey and White with obstructing the enforcement of the federal sex trafficking statute. *Id.*

Specifically, Count One alleged that Defendants Bailey and Roy aided and abetted each other in knowingly recruiting, enticing, harboring, providing, obtaining, maintaining, patronizing, and soliciting Victim 1, and benefitted financially from that venture. *Id.* at 1. The Indictment further alleged that Bailey and Roy committed these acts after having a reasonable opportunity to observe Victim 1, knowing that she had not attained the age of 18 and that she would be caused to engage in a commercial sex act. *Id.* at 1–2. Victim 1 was identified at trial as the minor victim named "K.T."

Counts Two, Three, and Four alleged that Bailey knowingly "recruited, enticed, harbored, provided, obtained, maintained, patronized, and solicited" Victims 2, 3, and 4, knowing that "means of force, threats of force, coercion," and any combination of such means would cause the victims to engage in a commercial sex act, and benefited financially from that venture. *Id.* at 3–5. Count Two charged Bailey with sex trafficking Victim 2, identified as "Haley"; Count Three charged Bailey with sex trafficking Victim 3, identified as "Sydnea"; and Count Four charged Bailey with sex trafficking Victim 4, identified as "Lizzy." *Id.*

Count Five alleged that Bailey, aided and abetted by White, "obstructed, attempted to obstruct, and in any way interfered with and prevented the enforcement of" the federal sex trafficking statute. *Id.* at 6. Count Six alleged that Bailey and Roy knowingly conspired to engage in the conduct described in Count One. *Id.* at 7.

All three defendants went to trial on September 23, 2025. [ECF No. 192]. After a five-day trial, a jury returned its verdict. Bailey was found guilty on all counts: conspiring to sex traffic a minor (Count Six); sex trafficking a minor (Count One); obstructing the enforcement of the statute

(Count Five); and sex trafficking three other victims by force (Counts Two, Three, and Four). [ECF No. 202]. Roy was found guilty on the two counts charged against her: conspiring to sex traffic a minor (Count Six) and aiding and abetting the sex trafficking a minor (Count One). *Id.* White was acquitted. *Id.*

Bailey now moves to set aside the guilty verdicts and requests a new trial on the ground that he was "denied the right to examine the voting record of the grand jury." [ECF No. 215, at 1]. Roy moves for a judgment of acquittal, or alternatively, a new trial, arguing that the jury's verdict is unsupported by the evidence. [ECF No. 216]. For the reasons that follow, both motions are **DENIED**.

## II. LEGAL STANDARD

Under Federal Rule of Criminal Procedure 29, a "defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." Fed. R. Crim. P. 29(c)(1). Upon such a motion, the court may consider "whether the evidence is insufficient to sustain a conviction," and the court "must enter judgment of acquittal of any offence for which the evidence is insufficient." Fed. R. Crim. P. 29(a).

In evaluating a Rule 29 motion, the court views the evidence in the light most favorable to the government. *United States v. Ordonez-Zometa*, 141 F.4th 531, 557 (4th Cir. 2025). A jury's verdict must be upheld if "it is supported by 'evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt.'" *United States v. Lamborn*, 159 F.4th. 230, 242 (4th Cir. 2025) (quoting *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996) (en banc)). In other words, "a judgment of acquittal is appropriate when the evidence is so deficient that acquittal is 'the *only* proper verdict.'" *United States v. Rafiekian*, 68 F.4th 177, 186 (4th Cir. 2023) (quoting *Tibbs v. Florida*, 457 U.S. 31, 42

(1982) (emphasis added)).

The standard for a motion for a new trial under Rule 33 is different. *See Ordonez-Zometa*, 141 F.4th at 557 (explaining the difference between Rules 29 and 33); Fed. R. Crim. P. 33. Under Rule 33, the court may "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Unlike Rule 29, the court may reweigh the evidence independently, without construing it in favor of the government. *Rafiekian*, 68 F.4th at 186. A new trial should be granted only in "rare" instances, "when the evidence weighs so heavily against the verdict that it would be unjust to enter judgment." *Id.* (first citing *United States v. Singh*, 518 F.3d 236, 249 (4th Cir. 2008); and then citing *United States v. Arrington*, 757 F.2d 1484, 1485 (4th Cir. 1985)). Put simply, the new trial standard under Rule 33 is "demanding." *United States v. Millender*, 970 F.3d 523, 531 (4th Cir. 2020).

### III. DISCUSSION

Defendant Roy moves for acquittal, or in the alternative a new trial, arguing that the Government failed to present evidence sufficient to sustain the jury's verdict. Defendant Bailey moves to set aside the verdict because he was denied the right to view grand jury documents.

#### A. Carrie Roy

I first turn to the application of Rules 29 and 33 to Defendant Roy's post-trial motion. Defendant Roy's motion fails under both Rule 29 and Rule 33. Under Rule 29, the United States presented sufficient evidence "to sustain a conviction." Fed R. Crim. P. 29(a). Viewed in the light most favorable to the United States, the jury's verdict is supported by "adequate and sufficient" evidence "to support a conclusion of a [Roy's] guilt beyond a reasonable doubt." *Lamborn*, 159 F.4th at 242. Under Rule 33, this is not one of the "rare" instances in which justice requires the court to reweigh the evidence, vacate the judgment, and grant a new trial. I will address Counts

One and Six separately under the Rule 29 standard first, then I will address them under the Rule 33 standard.

### 1. Count One

To obtain a conviction on Count One, the United States had to present sufficient evidence that Defendant Roy aided and abetted Defendant Bailey in the sex trafficking of the minor victim K.T. Specifically, Count One alleges

> In and around December 2023, at or near Charleston and Rand, Kanawha County, West Virginia within the Southern District of West Virginia, defendant TIWAN ROBERT BAILEY, also known as "Quick," and CARRIE ROY, also known as "Carrie Ash," aided and abetted by one another, in and affecting interstate or foreign commerce, knowingly recruited, enticed, harbored, provided, obtained, maintained, patronized, and solicited, by any means, Victim 1, and benefited financially and by receiving anything of value from participation in a venture which recruited, enticed, harbored, provided, obtained, maintained, patronized, and solicited, by any means, Victims 1, having had a reasonable opportunity to observe Victim 1 and knowing and in reckless disregard of the fact that Victim 1 had not attained the age of 18 years and that Victim 1 would be caused to engage in a commercial sex act.

[ECF No. 22, at 1–2]. The Government alleged this conduct violated 18 U.S.C. §§ 1591(a)(1), (b)(2), (c), and 18 U.S.C. § 2. *Id.* at 2.

As the court read on the record and instructed the jury, to sustain its burden on Count One, the Government had to prove the following beyond a reasonable doubt:

> FIRST:   That the defendant:
>
> knowingly recruited, enticed, harbored, provided, obtained, maintained, patronized, or solicited, by any means, Victim 1;
>
> or
>
> benefitted financially or by receiving anything of value from participation in a venture which recruited, enticed, harbored, provided, obtained, maintained, patronized, or solicited, by any means, Victim 1;

<div style="margin-left:2em">

SECOND: That the defendant did so in or affecting interstate or foreign commerce;

THIRD: The defendant knew or recklessly disregarded that Victim 1 had not attained the age of 18 years, and knew that Victim 1 would be caused to engage in a commercial sex act;

or

If the defendant knowingly recruited, enticed, harbored, provided, obtained, maintained, patronized, or solicited by any means Victim 1, the defendant had a reasonable opportunity to view Victim 1, who had not obtained the age of 18 years, and knew Victim 1 would be caused to engage in a commercial sex act.

</div>

*See* 18 U.S.C. §§ 1591(a)(1), (a)(2), and (c). The Government could also meet its burden if the jury found beyond a reasonable doubt that Roy aided and abetted another in the commission of the offense, as alleged in the Indictment. [ECF No. 22, at 1–2]; 18 U.S.C. § 2(a) ("Whoever commits an offense against the United States or aids, abets, counsels, commands, induce or procures its commission, is punishable as a principal."). In other words, the Government was not required to prove that each Defendant personally committed every element of the offense so long as it proved that they aided and abetted one another.

The question, then, is whether the Government presented sufficient evidence to support the jury's guilty verdict. Roy argues that neither element one nor element three is supported by the evidence.[1] Defendant offers three reasons for acquittal: (1) "the Government failed to prove that Defendant Roy took any direct action" regarding K.T. "knowing that K.T. would be caused to engage in a commercial sex act," (2) Defendant Roy did not have a reasonable opportunity to observe K.T. prior to the time K.T. was caused to engage in a commercial sex act, and (3) "no rational jury could have found that defendant Roy knew or recklessly disregarded K.T.'s true age." [ECF No. 216, at 12]. These arguments are not persuasive.

---

[1] That the crime occurred in or affecting interstate commerce is not contested. [ECF No. 216, at 12].

First, Roy argues that the Government "failed to prove that Defendant Roy took any direct action as to K.T., knowing that she would be caused to engage in commercial sex." [ECF No. 216, at 12]. The Government responds that a jury could find the Roy guilty based on evidence showing that she knew sex trafficking was happening, she drove victims—including K.T.—to locations for commercial sex, she lived with Defendant Bailey, and she collected the proceeds of K.T.'s commercial sex acts. [ECF No. 218, at 6–8]. Viewed in the light most favorable to the Government, this evidence is sufficient to support a conviction on Count One.

It is important to frame the allegation in the Indictment properly. Roy and Bailey are charged with *aiding and abetting* one another in the commission of sex trafficking of a minor. Accordingly, the Government was not required to prove that Roy actually committed any of the enumerated actions in 18 U.S.C. § 1591(a), such as recruiting, harboring, enticing, providing, and maintaining. Instead, it was sufficient for the Government to prove that Roy aided, abetted, counseled, commanded, induced, facilitated, or procured the commission of the offense. *See* 18 U.S.C. § 2.

Here, the evidence supports the jury's conviction of Defendant Roy for aiding and abetting Defendant Bailey in the sex-trafficking of K.T., a minor. The Government presented evidence that Roy often acted as the go-between for Bailey, the victims, other girls associated with the victims, and K.T. [ECF No. 210-29] (Government Exhibit 30). Exhibit 30 is a summary of Roy's Cash App records from November 2023 to August 2024. *Id.* These records show that Roy both sent money to and received money from Bailey, including during December 2023, as alleged in the Indictment. *Id.* The records further show that, during the same period, Roy sent money to K.T.[2] and Haley

---

[2] The Government offered testimony that K.T. used her mother's CashApp Account, named "Lea Ann Thompson." The Government's Exhibit 30 shows that Roy paid about $363.00 to the account "Lea Ann Thompson" in December 2023. [ECF No. 210-29]. Roy also directly sent money to K.T.'s account "Kd Bandz" in June and July of 2024. *Id.* The Homeland Security Investigations Special Agent Colin Nash further testified that Roy sent money to an account

7

(Victim 2) while the two were together. *Id.*

From December 19 to December 23, 2023, K.T. and Haley reserved a hotel room at the Comfort Inn for the purpose of engaging in commercial sex acts. [ECF No. 210-26] (hotel receipts); [ECF No. 210, 17–37] (Government Exhibit 1) (messages between K.T. and Bailey regarding commercial sex acts and photos of K.T. and Haley); [ECF No. 210-1] (Government Exhibit 2) (messages between Haley and Bailey about the Comfort Inn); [ECF No. 210-19, 210-20] (Government Exhibits 20 and 21) (advertisements on a pay-for-sex website by K.T. and Haley). While at the hotel, K.T. twice told Bailey that she and Haley "gave Carrie the $300." [ECF No. 210, 30, 35].[3]

The Government also presented evidence that Roy drove the victims—including K.T.—to various locations, including those where the victims engaged in commercial sex acts. Lizzy (Victim 4) testified that Roy primarily drove her to clients' houses for sex and that she would text Roy when she was finished. Sydnea (Victim 3) also testified that Roy drove her to and from sex work jobs. On cross-examination, Sydnea explained that Roy consistently drove the victims to "dates" while other male drivers "did not come until the end," after Roy was pulled over and no longer able to drive.[4] Haley testified that Roy took her to hotels and other people's houses for commercial sex and that she knew Roy took other girls to their jobs as well. Lastly, Haley testified that Roy did drive K.T. for the purpose of commercial sex.[5]

---

named "Chasity" referring to a person in Texas known to associate with K.T.

[3] At trial Lizzy testified that if a client paid via CashApp, the money would typically go to Roy who would send it to Bailey. Haley testified that she remembered sending money through the CashApp to Roy. Sydnea testified that she would follow a "chain of commands" and give money from a client to Haley who would give it to Roy to give to Bailey.

[4] Counsel did attempt to impeach the witness by reading grand jury testimony where Sydnea said that Roy would "sometimes" drive her to and from the hotels, in addition to another man who worked for Bailey, and the transportation was always reliable.

[5] Roy disputes this. During cross-examination, Haley first testified that she thought she remembered Roy driving her and K.T. somewhere. Later, however, she testified that she didn't remember Roy driving K.T. to any "out-calls," meaning another person's house for the purpose of commercial sex. "In-calls," which Haley used to describe the

8

The Government also presented evidence that Roy lived in the trailer with Bailey and K.T. in December 2023.[6] Lizzy, who lived at the trailer at some point, described Roy as an "errand boy" at the trailer and testified that she talked to Roy about sex work. Haley described Roy as Bailey's "worker." Emma Burdette, a Government witness and friend of K.T.'s, testified that on one occasion Bailey brought her and K.T. back to the trailer where Bailey and Roy lived. Haley also lived in the Rand trailer for a time, and she testified that Roy lived there at the same time K.T. did and that Haley had discussed her sex work in front of Roy.

In summary, the Government offered sufficient evidence that Roy: (1) collected and distributed money from Bailey's sex trafficking victims, including K.T., (2) facilitated transportation of the victims to and from locations where they engaged in commercial sex acts, and (3) lived in the trailer where Bailey lived, where other victims lived, and where K.T. lived. A reasonable jury could conclude that the evidence demonstrated that Roy was one "who aids, abets, counsels, commands, induces, facilitates, or procures the commission of an act," making her criminally liable for aiding and abetting Bailey.[7] Indeed, 18 U.S.C. § 2 "reflects a centuries-old

---

commercial sex performed at the Comfort Inn, are different. While the use of certain terminology may cast some doubt on the witness's recollection of certain facts, it does not work as a refutation of her entire testimony. Nonetheless, this is the kind of testimony a jury is expected to weigh against the rest of the evidence in the case, and it is the province of the jury to determine the credibility of each witness and her testimony. In this instance, a reasonable jury could have found that this testimony supported a conviction.

[6] Ms. Mariah Bennett's testimony showed that K.T. lived there too, and Lizzy testified that she saw "[Roy] every day that [she] was" at the trailer.

[7] A jury could reasonably find that Roy's actions clearly benefited Bailey's commercial sex-work operation. The jury had the opportunity to consider K.T.'s description of the sex-work, particularly when she described it to Lizzy:

> If you're working for him he will be you're daddy basically your pimp so u will have to stay loyal like u can't be texting all the negative cp people back and always be out chilling I can try it for a few days with me and Haley and see if u like it if not I can leave you're gonna be living with us he will provide u w your dope Haley does heroin too just limit yourself don't always be strung out u can get high all day but when it's time for business u got to get ready and it's not just a job it's a family so if u join please don't play we all take care of each other depending if the days slow I can make 1000 a day n u don't have to work everyday n I will help u get comfortable U DO HAVE TO GIVE HIM ALL THE MONEY U MAKE SO LMK IF YOURE COOL WITH THAT it might seem weird at first like you're not getting all you're money but in the end u are he gets us whatever we want food, dope, clothes, nails done, we go to the mall all the time and he will always make sure you're okay he won't let anyone bother u SERIOUSLY THO U NEED TO STOP TALKING TO

view of culpability: that a person may be responsible for a crime he has not personally carried out if he helps another to complete its commission." *Rosemond v. United States*, 572 U.S. 65, 70 (2014) (citing J. Hawley & M. McGregor, Criminal Law 81 (1899)).

Under a Rule 29 analysis, this evidence must be viewed in the light most favorable to the Government. The evidence shows that Roy aided and abetted Bailey in his sex trafficking of K.T., as alleged in Count One. Roy facilitated the exchange of money and transported victims to locations where they engaged in commercial sex acts, with proceeds ultimately relinquished to Bailey. The Government's witnesses testified that Roy was involved in the operation in some capacity. Even if the jury believed that Roy did not take direct action—unlikely in the face of the evidence—the Government presented adequate and sufficient evidence that Roy aided and abetted Bailey.

Second, Roy argues that the Government failed to present sufficient evidence that Roy had a reasonable opportunity to observe K.T. [ECF No. 216, at 14–16]. Under 18 U.S.C. § 1591(c), a defendant's opportunity to observe a minor victim relieves the Government of its burden of proving that the defendant knew or recklessly disregarded the victim's age. In full, the statute states:

> In a prosecution under subsection (a)(1) in which the defendant had a reasonable opportunity to observe the person so recruited, enticed, harbored, transported, provided, obtained, maintained, patronized, or solicited, the Government need not prove that the defendant knew, or recklessly disregarded the fact, that the person had not attained the age of 18 years.

18 U.S.C. § 1591(c).

In Count One, the Government alleged that Roy had an opportunity to observe K.T. under

---

SOME OF THE PEOPLE UP THERE this is a good opportunity Liz sometimes u have to make sacrifices and cut people off

[ECF No. 210-16, at 4].

10

Section 1591(c). And the Government presented sufficient evidence to support the jury's finding on this point. K.T. lived in the Rand trailer for at least 10 days in December 2023, the same trailer where multiple witnesses testified Roy lived with Bailey. Ten days (or as long as two weeks, as testified by some witnesses) in a single-wide trailer with limited space is sufficient to have a reasonable opportunity to observe, especially when witnesses testified that Roy slept on the couch of the living room of the trailer. [ECF No. 211-1–211-8] (images of the small trailer). In addition, the Government presented evidence that Roy drove K.T. to the Comfort Inn and collected money from her. Taken together, these circumstances are more than sufficient for a jury to conclude that Roy had a reasonable opportunity to observe K.T. as a minor.

Lastly, Roy contends that the Government presented no evidence to prove beyond a reasonable doubt that Roy knew or recklessly disregarded K.T.'s age. [ECF No. 216, at 16–17]. While proof of knowledge (or reckless disregard) is not necessary to sustain a conviction under § 1591(a)(1), it is required to sustain a conviction under § 1591(a)(2). And after the five-day trial, the jury found that Roy had violated *both* sections. [ECF No. 202]. Defendant now challenges the sufficiency of the evidence presented to support the jury's finding that Roy knew or recklessly disregarded K.T.s age. I am not persuaded by Roy's argument.[8]

The Government presented evidence that K.T. lived in the same small trailer as Roy and that Roy drove K.T. to jobs. The Government also introduced communications between K.T. and Bailey, including photos of herself, as well as photos of them together. [ECF No. 210, at 2] (picture of K.T. and Bailey); *see also* [ECF Nos. 210-19, 210-20] (pictures of Haley and K.T. on the sex-advertisement website).

---

[8] Even if I were to agree with Roy's argument, the jury's conviction on Count One was supported by the evidence that Roy had a reasonable opportunity to observe K.T. and aided and abetted Bailey in trafficking her under 18 U.S.C. § 1591(a)(1). Therefore, a judgment of acquittal would be inappropriate.

Considering all of the evidence in the light most favorable to the Government, a jury could conclude that Roy and Bailey recklessly disregarded K.T.'s true age, and that all of Roy's actions aided and abetted Bailey in sex trafficking K.T. for his financial benefit, in violation of 18 U.S.C. § 1591(a)(2). This alone is sufficient to support and sustain a conviction on Count One. Still, Roy's conviction on Count One is supported by evidence of aiding and abetting criminal conduct in violation of both §§ 1591(a)(1) and 1591(a)(2).

### 2. Count Six

Defendant Roy also argues that the Government failed to present sufficient evidence that she conspired to commit a sex trafficking offense. Related to Count One, Count Six charges Defendants Roy and Bailey with conspiring to sex traffic the minor K.T.. in violation of 18 U.S.C. § 1594(c). [ECF No. 22]. The jury found that both Bailey and Roy were guilty of conspiring to sex traffic K.T. [ECF No. 202]. Now, Defendant Roy moves for acquittal.

At its heart, "conspiracy is 'the combination of minds in an unlawful purpose.'" *Smith v. United States*, 568 U.S. 106, 110 (2013) (quoting *United States v. Hirsch*, 100 U.S. 33, 34 (1879)). In other words, it is an "agreement to effectuate a criminal act." *United States v. Laughman*, 618 F.2d 1067, 1074 (4th Cir. 1980). Conspiracies are often private, hidden from the public, and therefore result "in little direct evidence of such an agreement." *United States v. Burgos*, 94 F.3d 849, 857 (4th Cir. 1996). That is why the Government may present, juries may consider, and courts can rely on circumstantial evidence. Indeed, in some cases circumstantial evidence may entirely prove the existence of a conspiracy. *Id.* at 858. That evidence may include the defendant's "relationship with other members of the conspiracy, the length of this association, [the defendant's] attitude, conduct, and the nature of the conspiracy." *United States v. Collazo*, 732 F.2d 1200, 1206 (4th Cir. 1984). In this case, the Government had to prove that (1) two or more persons entered

into an agreement to sex traffic a minor in violation of 18 U.S.C. § 1591(a)(1), (2) Roy knew of the conspiracy, and (3) she voluntarily became a part of it. *United States v. Rhymes*, 827 F. App'x 266, 268 (4th Cir. 2020) (citing *McMillan*, 813 F. App'x at 849 and *Burgos*, 94 F.3d at 857).

Here, the Government presented sufficient and adequate evidence for a jury to conclude that Roy knowingly conspired with another to sex traffic the minor victim K.T. As already discussed, Roy lived in the same trailer as K.T. and Bailey, and victim witnesses testified that they openly discussed their sex work in the small trailer. Roy collected money from victims, including K.T. She also sent money to and received money from Bailey, acting seemingly as a necessary part of the sex trafficking conspiracy. And again, the Government presented evidence that Roy directly and purposely advanced the conspiracy by transporting the girls to clients and hotels, including K.T. and Haley in December 2023 as alleged in the Indictment.

Contrary to Roy's argument, the Government presented both direct and circumstantial evidence to tie Roy to a conspiracy to sex traffic K.T. As outlined, the evidence included Roy's various roles; the time and space Roy, K.T., and Bailey spent together; and the relationship between Roy, Bailey, the victims, and other coconspirators.[9] Considering all of this, the jury's conclusion is sufficiently and adequately supported by the evidence. Therefore, a judgment of acquittal under Rule 29 is not appropriate.

### 3. Rule 33

Alternatively, Defendant Roy asks the court to order a new trial under Federal Rule of Criminal Procedure 33. Under Rule 33, the court may "vacate any judgment and grant a new trial

---

[9] *Compare United States v. Wysinger*, 64 F.4th 207, 213 (4th Cir. 2023) (holding that a reasonable jury could conclude that coconspirators had a shared intent when they lived together and with sex trafficking victims, among other factors) *with United States v. McMillan*, 813 F. App'x 846, (4th Cir. 2020) (unpublished) (holding that the Government failed to provide evidence that one alleged coconspirator "purposely assisted" another "with sex trafficking and thereby either tacitly entered into an agreement").

if the interest of justice so requires." Fed. R. Crim. P. 33(a). This standard permits the court to reweigh the evidence, but a new trial should only be granted in the "rare" circumstance where "the evidence weighs so heavily against the verdict that it would be unjust to enter judgment." *Rafiekian*, 68 F.4th at 186 (citing *Arrington*, 757 F.2d at 1485).

This is not such a case. The evidence—presented over three and a half days of testimony and comprised of more than 100 exhibits—implicates Bailey as the leader and organizer of the sex trafficking operation. The evidence similarly shows that Defendant Roy aided and abetted him throughout, including the sex trafficking of K.T., during December 2023. Roy collected money from and sent money to Bailey and the victims, drove the victims, including K.T. to hotels, and lived in the Rand trailer with Bailey and the victims that would pass through, including K.T.

Roy was part and parcel of the conspiracy and operation to sex traffic K.T. and others. Even without construing the evidence in the light most favorable to the Government, the evidence sufficiently supports Roy's conviction on Counts One and Six. This is not the rare instance where justice demands a new trial, nor does the evidence weigh against the verdict. Indeed, for many of the reasons already stated, the evidence weighs in favor of the verdict and the court will not disturb it. Therefore, the Roy's Motion for a new trial under Rule 33, [ECF No. 216], is **DENIED**.

### B. Tiwan Bailey

In his post-trial motion to set aside the verdict and order a new trial, [ECF No. 215], Defendant Bailey asserts only one argument. He argues that he was denied the right to examine the voting record of the grand jury and that this alleged denial entitles him to a new trial. *Id.* Bailey advanced the same argument before trial, [ECF No. 136], and this court rejected it because he "failed to offer any particular reasons for disclosure." [ECF No. 147, at 3]. The court sees no basis to reconsider that ruling, as Bailey has yet to offer any reason justifying the disclosure of the

requested grand jury document. Therefore, the motion, [ECF No 215], is **DENIED**.

IV. **CONCLUSION**

For the foregoing reasons, Defendant Tiwan Bailey's Post-Trial Motion to Set Aside Verdicts and Order a New Trial, [**ECF No. 215**], and Defendant Carrie Roy's Renewed Motion for Judgment of Acquittal or, in the Alternative, Motion for New Trial, [**ECF No. 216**], are **DENIED.**

The court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to the defendants and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

ENTER: February 3, 2026

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE